IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**TIMOTHY ERNLE,**

    Petitioner,

v.

**F. ENTZEL, Warden**

    Respondent.

**Civil No.: 5:18CV129
(JUDGE STAMP)**

## REPORT AND RECOMMENDATION

This case is before the undersigned for consideration of *pro se* Petitioner Ernle's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Respondent's Motion and Memorandum to Dismiss or, in the Alternative, for Summary Judgement, Petitioner's Response in Opposition to Respondent's Motion and Petitioner's Motions to Expedite. ECF Nos. 1, 8, 14, 24, 26.

### I.      Procedural History

On August 8, 2018, Petitioner filed a Writ of Habeas Corpus Under 28 U.S.C. § 2241.  ECF No. 1. On August 10, 2018, Petitioner paid the $5 filing fee. ECF No. 4. On September 10, 2018, Petitioner filed a Motion/Request to Expedite Petition, alleging that if this Court granted the relief requested in his petition, his statutory release would be imminent.  On October 10, 2018, the undersigned ordered Respondent to show cause as to why the writ should not be granted. ECF No. 9.

On November 14, 2018, Respondent answered with a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a Memorandum in Support and

1

exhibits. ECF Nos. 14, 15, 17. A Roseboro Notice was issued to the Petitioner by the undersigned on November 20, 2018, pursuant to Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975), instructing Petitioner of his right to file a response to Respondent's Motion and Memorandum. ECF No. 18. Petitioner filed a Traverse on December 20, 2018. ECF No. 24. Finally, on March 19, 2019, Petitioner filed a second Motion to Expedite alleging that if the Bureau of Prisons had properly calculated his jail credits, he already would have been released.

## II.     Facts

On August 11, 2010, New York State authorities in Madison County arrested Petitioner for a Parole Violation, Case No. 191-2007. On August 26, 2010, Petitioner was arrested by the State of New York on two charges. Charge One alleged Robbery in the 1st degree; Use Dangerous Weapon and Charge Two alleged Robbery in the 3rd degree, Case No. 2010-423. On September 16, 2010, Petitioner's parole was revoked on Case No. 191-2007, and he was sentenced to serve the remainder of his original sentence. Petitioner served this sentence until his maximum expiration date of February 7, 2011. Petitioner remained in state custody following the expiration of this term and received 136 days jail credit towards his sentence in Case No. 2010-423.  On March 2, 2011, in Case No. 2010-423, Petitioner pleaded guilty to the second charge, and the first charge was dismissed. On May 11, 2011, he was sentenced to an indeterminate term of three years minimum to six years maximum. ECF No. 14-3 at 3.

On May 4, 2011, Petitioner was  indicted on federal charges in the United States District Court for the Western District of New York on multiple counts of Bank Robbery by Force or Violence  and multiple counts of Robbery of Property or Money.   On March

25, 2013, Petitioner entered into a plea agreement whereby he agreed to plead guilty to Count 7 of the Indictment which charged a violation of Title 18, United States Code, Section 2113(a) (bank robbery), for which the maximum possible sentence was a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 3 years. In addition, the plea agreement provided that Petitioner was a Career Offender and that Guidelines § 4B1.1(b)(3) applied. At sentencing, the government agreed not to oppose the recommendation that the Court apply the two level downward adjustment of Guidelines § 3E1.1 (acceptance of responsibility) and further agreed to move the Court to apply the one level downward adjustment of Guidelines § E1.1(b), which would result in a total offense level of 29. The parties further agreed that Petitioner's criminal history category was VI. Accordingly, Petitioner's guideline range was a term of imprisonment of 151 to 188 months.

On July 15, 2016, Petitioner was sentenced in the United States District Court for the Western District of New York to a 65 month term of confinement, which was below the guideline range. The Judgment was ordered to run consecutive to New York state Case Number 2010-423. ECF No. 14-3 at 31.

From at least January 23, 2012, until he was sentenced, Petitioner was in the custody of the U.S. Marshall Service pursuant to a Writ of Habeas Corpus ad Prosequendum ("WHCAP"). ECF No. 14-4 at 26. While he was on federal Writ, Petitioner was held in jails and detention centers located within the State of New York until July 15, 2016, when he was transferred to the Northeast Ohio Correctional Center. ECF No. 14-2, ¶ 9. On March 6, 2015, Petitioner was granted a conditional release by

the New York State Department of Correctional Services. ECF No. 1-2 at 4. However, because he was in the custody of the U.S. Marshal Service, he remained "in custody" pursuant to the WHCAP. Between the first and second day of August 2016, shortly after Petitioner was sentenced in Federal Court, an inmate records coordinator at New York State Department of Corrections and Community Supervision ("DOCCS) and the Transportation Coordinator at DOCCS exchanged a series of emails indicating Petitioner had been sentenced to a consecutive federal term and was ready to be returned to the State of New York. ECF No. 14-4 at 24-29.The emails further discussed Petitioner had an approved conditional release from his New York State sentence which had passed and that he would be immediately eligible for release upon his return to the New York Department of Corrections. However, Petitioner was being detained in Ohio by the US Marshal Service and to alleviate the cost of transporting Petitioner back to the State of New York, the U.S. Marshals has requested to "sign out" the inmate to his conditional release. It appears from the emails that this request was granted.

Therefore, Petitioner was not returned to New York state authorities. Instead, he remained in the Ohio Correctional Center until August 9, 2016, when he was released via conditional release from his New York State sentence.  This resulted in Petitioner entering exclusive federal custody, and the Bureau of Prisons commenced his federal sentence on August 9, 2016. ECF No. 14-4 at 4.

On July 11, 2018, the United States, upon an affidavit filed separately under seal, filed a notice of motion and motion for sentencing-related relief. On August 1, 2018, the United States District Court for the Western District of New York granted the Government's Rule 35(b) Motion and amended Petitioner's judgment, reducing his term

4

of imprisonment from 65-months to 51-months. ECF No. 14-4 at 6-7.  The Bureau has prepared a sentence computation for Petitioner based on a 51-month term of confinement beginning on August 9, 2016, with no prior credit time because in imposing the federal sentence, the court ordered it to run consecutive to the state term Petitioner was then serving. Based on this calculation, Petitioner is currently scheduled to release from Bureau custody, via Good Conduct Time release on April 22, 2020. ECF No. 14-4 at 2.

### III.     The Pleadings

**A. The Petition**

After reciting the history of his state and federal convictions, Petitioner alleges that in January of 2015, while in federal custody on the writ, he sent a letter to the New York DOCCS requesting that he be conditionally released pursuant to New York Penal Law 70.40(b). As evidenced by an attachment to his petition, on March 5, 2015, the Chairmen of the DOCCS recommended conditional release effective February 7, 2015 because Petitioner had satisfied required programs and had no disciplinary actions. ECF No. 1-2 at 4. The Superintendent confirmed that recommendation and on March 6, 2015, the Commissioner affirmed the decision. Id.

Petitioner acknowledges that 18 U.S.C. § 3585(b) does not authorize a credit on a federal sentence for any prison time that has already been credited to another sentence and precludes what is known as double counting. However, relying on U.S. v. Ortiz,[1] 2009 U.S. Dist. LEXIS 63101 (E.D.N.Y. July 22, 2009) and Rosemond v.

---

[1] In Ortez, Petitioner requested a recommendation from the court to the BOP to credit him with 235 days that he spent in federal custody from September 24, 2017 (the first day he became eligible for parole on his state sentence) to May 16, 2008 (the date of his federal sentencing)

5

Menifee,[2] 137 F.Supp. 2d 270 (S.D.N.Y. 2000), Petitioner alleges that had he not been in federal custody pursuant to a writ, he would have been released from the state on his conditional release date which was February 7, 2015, and the time thereafter until he was sentenced, would have been applied towards his federal sentence. Accordingly, Petitioner requests that this Court order the BOP to calculate his sentence with 570 days of pretrial detention credit.

**B. Respondent's Motion and Memorandum**

Respondent first notes that the State of New York had primary jurisdiction over Petitioner at the time he was borrowed on writ. Respondent further maintains that the State of New York did not relinquish primary custody of Petitioner. Respondent also argues that Petitioner's federal sentence did not commence until August 9, 2016, when he was released from the State of New York sentence to federal custody, and he is not entitled to the jail credits for the time he seeks as that time was already credited to another sentence. Finally, with respect to Petitioner's reliance on Rosemond, Respondent argues that its decision is not binding authority on this Court, and the exception noted in that decision has not been adopted by the Fourth Circuit.

---

against his federal sentence. In the alternative, he sought a 53-day credit for the time he spent in federal custody from March 24, 2008 (the mandatory release date for the state sentence) to May 16, 2008. The Court declined to award him the 235 days because under New York state law, parole determinations are discretionary, and Petitioner's argument rested on the unfounded assumption that "it seems likely" the State Parole Board would have granted parole. However, the Court found he was entitled to the 53-day credit beginning March 24, 2008 because he had accumulated all available credits for good time.

[2] In Rosemond, the Court held that due process and fundamental fairness required the BOP to credit Petitioner with 87 days towards his federal sentence for time he spent in federal detention pursuant to a writ of habeas corpus ad prosequendum. The court noted that Petitioner Rosemond was scheduled for conditional release from his New York state sentence two days after he was taken into custody on the federal writ. When he returned to state custody, he was released by the state two days later, which was "strong evidence the State of New York would have released petitioner" earlier "but for the fact that he was in federal custody pursuant to the federal writ." Rosemond, 137 F.Supp. 2d at 275.

Respondent also argues that the courts that have been critical of this decision note that it relies on cases governed by 18 U.S.C. § 3568, the predecessor to § 3585(b). Moreover, Respondent argues that the facts of this case are distinguishable from Rosemond. Specifically, Respondent notes that in Rosemond, the inmate was transferred from New York State to California and was unable to conditionally release from his state sentence. However, in the instant case, Petitioner remained in New York state, and he has not shown that he asked to appear personally before New York authorities for a hearing. Moreover, unlike Rosemond, whose sentence was lengthened solely by the actions of federal authorities, in the instant case the actions of the federal authorities were not the sole reason for Petitioner being held in federal custody. Rather, they argue that Petitioner himself requested on four separate occasions to remain in federal custody. Finally, Respondent argues that Petitioner has his time in federal custody considered when the federal sentence was imposed.

**B.  Petitioner's Response**

In his traverse to the Respondent's alternative motions, Petitioner argues that pursuant to New York Penal Law 70.40(1)(b), New York Corrections Law 803 and 7 NYCCR 261.2(a)(b)(c), an inmate can request and be awarded good time credits and, as applicable, conditional release to parole. Once awarded, Petitioner alleges that an inmate has a protected liberty interest that requires due process.

Petitioner also alleges that in January of 2015, as required by New York Penal Law 70.40(1)(b), he wrote the New York State Department of Corrections and requested that he be awarded his good conduct time credits and granted his conditional release. Petitioner argues that while he was in state custody, he satisfied his required

7

programs and received no disciplinary infractions, and therefore, he was not required to appear before the Livingston Correctional Facility-Time Allowance Committee ("TAC"). Instead, TAC reviewed his file and recommended to the facility Superintendent, knowing that Petitioner was in federal custody, that he receive the total amount of good time credits available and his conditional release to parole. Ultimately, the Superintendent and then the DOC Commissioner affirmed the TAC's recommendation, and he was awarded conditional release to parole.

In summary, Petitioner argues that federal authorities obtained primary jurisdiction of Petitioner on March 6, 2015, when he was awarded conditional release to parole. Based on this shift in primary jurisdiction, Petitioner continues to argue that he is entitled to 540 days of prior jail credit based on the reasoning in Ortez. In the alternative, Petitioner again argues that he is entitled tor relief as set forth in Rosemond because but for federal action, i.e., the WHCAP, he would have been released under available state procedures and credit would have given against his federal sentence.

## IV.    Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed

in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id.  Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

### V.     Analysis

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination when the sentence commences. United States v, Wilson, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b) which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentences commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Id.

In Wilson, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. 329 at 337.  Thus, prior custody credit cannot be awarded to a prisoner if the prisoner has already received credit towards another sentence.  See United States v. Brown, 977 F.2d 574, 1992 WL 237275, at *1 (4th Cir. Sept. 25, 1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence); United States v. Goulden, 54 F.3d 774, 1995 WL 298086 (4th Cir. May 17, 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

Under section 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody while waiting transportation to, or arrives

voluntarily to commence service at, the official detention facility at which the sentence is to be served." Generally, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). When an inmate is borrowed pursuant to a WHCAP, the original sovereign "has merely loan[ed] that prisoner to federal authorities" and does not forfeit its primary jurisdiction." Id. "Rather, the state retained primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id.

None of the foregoing "law" is contested by either Petitioner or Respondent. The sole issue presented in this matter is whether Petitioner is entitled to credit against his federal sentence from March 6, 2015, when he was granted a conditional release by the State of New York Department of Correctional Services and August 9, 2016, when Petitioner entered exclusive federal custody. To the undersigned's knowledge, the issue raised in this petition has not been addressed by the Fourth Circuit and has rarely been discussed except by district courts within the Second Circuit.

After considerable deliberation, the undersigned concludes that Petitioner is not entitled to the relief he requests. As previously noted, Petitioner relies on the Rosemond[3] decision, in which the court concluded it "would represent a manifest injustice" to deny the petitioner credit for his time in federal detention. Rosemond, 137 F. Supp. 2d 275. The court determined that, but for his transfer to federal custody pursuant to a WHCAP, the petitioner would have been conditionally released from his

---

[3] The undersigned recognizes that Petitioner also relies on the decision in Ortiz, which Respondent did not address. However, Ortiz is clearly distinguishable because the 53 days credit awarded in that case followed a mandatory release date, not a conditional release date.

12

state sentence almost three months sooner because of credit for "'good behavior'" that the petitioner had accumulated while in state custody. Id. at 273 (quoting N.Y. Penal Law § 70.40(1)(b)).

There are several problems with Rosemond's application to the instant case. First, it is doubtful whether its holding can be reconciled with 18 U.S.C. § 3585(b)'s prohibition against double counting. Although the Second Circuit has not addressed the issue, other district courts in that Circuit have expressed skepticism as to its consistency with § 3585(b). See, e.g., Sbarro v. Billingsley, 2013 WL 120817 at *5 (S.D.N.Y. 2013) (noting that Rosemond's approach "has not …been adopted by the Second Circuit, and other courts here and in other circuits have held that it cannot apply to time periods that have already been credited to a state sentence—that is, they have held that the prohibition on double-counting trumps any such exception"); Mitchell v. Killian, No. 08-CV-2373 (LAP), 2011 WL 710612, at *2 (S.D.N.Y. Feb. 25, 2011) (noting that Rosemond is not …settled law. Furthermore, the cases relied upon in Rosemond all were cases where the computation of sentence was governed by 18 U.S.C. § 3568, the predecessor to § 3586(b).[4]

Moreover, unlike Rosemond, Petitioner's unavailability for conditional release was in large part of his own doing. Although a WHCAP was returned executed as to Petitioner on June 13, 2011, and a second was issued on December 16, 2011, it is critical to note that Petitioner's continued status in federal custody as opposed to state custody was discussed on January 23, 2012 and on February 3, 2012. On both

---

[4] Section 3568 was enacted in 1966. In the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et. seq., which became effective in 1987, Congress rewrote § 3568 and recodified it at § 3585(b). The central idea remained unchanged, and in fact, § 3585(b) states explicitly that double crediting is prohibited, something that § 3568 had implicitly stated. United States v. Wilson, 503 U.S. 329 (1992).

13

occasions, Petitioner requested to remain in federal custody. Again, on March 5, 2012, Petitioner asked to remain in federal custody, and the Court granted the request finding a "knowing and voluntary decision to do so." The docket does not reflect that another WHCAP was ever issued or returned, and it appears that Petitioner remained in the custody of the United States Marshal Service until after Judgment was entered on July 21, 2016. Therefore, Petitioner was in the custody of the Marshal Service for more than two years before he was eligible for conditional release from his New York state conviction, and that time appears to have been at his own request.

Finally, it is critical to note that in the Court's Statements of Reasons, the district judge noted:

> The Court granted defense counsel's motion for the equivalent of a 2-level variance in order **to account for time served in physical custody on an undischarged term of imprisonment for an unrelated state case**, which facilitated the defendant's ability to cooperate in other investigations and prosecutions. The Court determined that a sentence of 65 months was sufficient but not greater than necessary and granted the variance in order to achieve a reasonable sentence and to avoid unwarranted sentencing disparities.

ECF No. 15-1 at 21 (emphasis added).

Petitioner's sentence of 65 months incarceration was 86 months below the low end of the guideline range of 151 to 188 months. 86 months represents approximately 2580 days, far more than the 570 days of pretrial detention credit he is seeking. Clearly Petitioner received a far greater benefit from remaining in custody pursuant to WHCAP then he would have received had he been available for the State of New York to release him on "conditional parole." To award Petitioner the relief he is requesting would circumvent the sentencing judge's rational in awarding him a two level variance and would amount to an improper "windfall" not contemplated by either Ortiz or Rosemond.

14

## IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's "Motion to Dismiss or for Summary Judgment" **[ECF No. 14]** be **GRANTED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned further **RECOMMENDS** that Petitioner's Motions to Expedite [ECF Nos. 8 & 26] be **DENIED AS MOOT** because he is not entitled to immediate release from federal incarceration.

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District

Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: June 10, 2019

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE